UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------X

OLAF SÖÖT DESIGN, LLC,

                         Plaintiff,            15 Civ. 5024

    -against-                        OPINION

DAKTRONICS, INC. and DAKTRONICS HOIST, INC.,

                       Defendants.

-----------------------------------------------X

A P P E A R A N C E S:

       Attorneys for Plaintiff

       TROUTMAN SANDERS LLP
       875 Third Avenue
       New York, NY 10022
       By: James M. Bollinger, Esq.
            Timothy P. Heaton, Esq.
            Phoenix S. Pak, Esq.
            Katherine Harihar, Esq.

       Attorneys for Defendants

       BLANK ROME LLP
       405 Lexington Ave
       New York, NY 10174
       By: Kenneth L. Bressler, Esq.

       BLANK ROME LLP
       717 Texas Avenue, Suite 1400
       Houston, TX 77002
       By: Russel T. Wong, Esq.
            Linh Bui, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10 26 16

**Sweet, D.J.**

Plaintiff Olaf Sööt Design, LLC ("Olaf Sööt" or "Plaintiff") has moved for claim construction on 12 terms appearing in U.S. Patent No. 6,520,485 ("the '485 Patent"). Defendants Daktronics, Inc. and Daktronics Hoist, Inc. ("Daktronics" or "Defendants") has moved for summary judgment of non-infringement on the '485 Patent.  Based on the conclusions set forth below and the claim constructions determined by the Court, the motion for summary judgment on non-infringement is denied.

**Prior Proceedings**

Plaintiff brought this action for patent infringement on June 26, 2015.  The '485 Patent is for a stage scenery winch system that helps to move large scenes quickly and efficiently replacing the work that had been done by counterweight sets.

The instant motion for summary judgment on non-infringement was heard and marked fully submitted on June 8, 2016.  The claim construction motion was heard and marked fully submitted on September 15, 2016.

1

**The Applicable Standard**

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The relevant inquiry on application for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

A court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. *Westinghouse Elec. Corp. v. N.Y. City Transit Auth.*, 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting *Anderson*, 477 U.S. at 249). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

2

requirement is that there be no <u>genuine issue of material fact</u>."
*Anderson*, 477 U.S. at 247-48 (emphasis in original).

The Supreme Court has held that claim construction is
a matter of law to be determined by the court in order to assist
the jury with questions of patent infringement. *Markman v.
Westview Instruments*, 517 U.S. 370, 372 (1996). There are two
steps to an infringement claim on summary judgment. The first
step is determining "the meaning and scope of the patent claims
asserted to be infringed" and the second step is "comparing the
properly construed claims to the device accused of infringing."
*Markman v. Westview Instruments*, 52 F.3d 967, 976 (Fed. Cir.
1995).

**Claim Construction Standard**

Claim terms "are generally given their ordinary and
customary meaning" as understood by "a person of ordinary skill
in the art at the time of invention." *Phillips v. AWH Corp.*,
415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) (citations and
internal quotation marks omitted). The court reads a claim term
"not only in the context of the particular claim in which the
disputed term appears, but in the context of the entire patent,
including the specification." *Id.* at 1313; see also, *Williamson*

3

*ex rel. At Home Bondholders' Liquidating Trust v. Verizon Communications Inc.*, Nos. 11 Civ. 4948(LTS)(HBP), 13 Civ. 0645(LTS)(HBP), 2013 WL 4083267, at *1-2 (Aug. 12, 2013).

The patent specification is "always highly relevant to the claim construction analysis" has been described as "a dictionary when it expressly defines terms used in the claims" and "the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). It is a "statutory requirement that the specification describe the claimed invention in 'full, clear, concise, and exact terms.'" *Phillips*, 416 F.3d at 1316 (quoting 35 U.S.C. § 112).

"However, preferred embodiments and written descriptions in the specification should not be used to limit the scope of claims." *Williamson ex rel. At Home Bondholders' Liquidating Trust*, 2013 WL 4083267, at *2; see also, *Phillips*, 416 F.3d at 1320 ("reading a limitation from the written description into the claims" is "one of the cardinal sins of patent law") (quoting *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001)). "[I]t is important to keep in mind that the purposes of

4

the specification are to teach and enable those of skill in the art to make and use the invention," not to define the limits of a claim term. *Phillips*, 416 F.3d at 1323.

**Agreed Upon Constructions**

The parties agreed to the constructions for Terms 1 and 2 and therefore the parties' mutual constructions are adopted.

**Disputed Constructions**

Term 3:  Base Member

The parties dispute the construction for Term 3, the base member.  Plaintiff's proposed construction is "one or more components of the winch assembly that are connected to the carriage to support and position the drum assembly." Defendants' proposed construction is "a component of the winch that is separate from the carriage and supports the drum." There are three disputes in these competing constructions.  The first is whether there can be more than one component in the base member; second, whether the base member is connected to the

5

carriage or separate from the carriage; third, whether the base member supports the drum.

First, the parties dispute whether there can be more than one component in the base member because the allegedly infringing Vortek product produced by the Defendants is constructed with two components that collectively comprise the base member.  If there can only be one base member, then the Vortek product is not infringing on Plaintiff's patent.

The Federal Circuit instructs that when interpreting a claim, "First, we look to the words of the claims themselves . . . to define the scope of the patented invention." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  In the '485 Patent, Claims 21 and 27 both define base member as "a base member having first and second end portions." This language indicates that there is only one base member.  The key question is whether there can be more than one component that collectively comprises the base member.  The claim lists two required components of the base member:  first and second end portions.  Therefore there are at least two components that comprise the base member and the base member can be comprised of two or more components.

6

Second, the parties dispute whether the base member is connected to the carriage or separate from the carriage.  Both parties are correct.  This issue is not addressed in the claim, but is detailed in the drawings and specifications.  When the answer is not clear from the text of the claim, "second, it is always necessary to review the specification" which "acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication." *Vitronics*, 90 F.3d at 1582.  Further, "Claims must be read in view of the specification, of which they are a part." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384 (1996).  The specification "is the single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582.

Here, the specifications in Figures 1, 2, 7, and 8 all show that the base member is separate from the carriage and is connected to the carriage by slideable linear bearings.  Both parties' constructions will be adopted.

Third, the parties dispute whether the base member supports the drum.  The claim states that the drum has "a

7

longitudinal axis rotatably mounted on the base member."  All of
the drawings show that the drum is mounted on the base member.
Plaintiff advances an interpretation of the term that finds that
the base is "connected to the carriage to support and position
the drum assembly."  Therefore, it appears that the parties
agree that in some way since the drum is mounted to the base
member and therefore that the base member supports the drum.
However, Defendants' construction adheres more closely to the
only portion of the specification that discusses this issue in
which the invention is summarized as saying that "the drum (and
its support base)."  ('485 Patent at 2:2.)  Therefore, the base
member supports the base.

The adopted construction is:  "one or more components
of the winch, including first and second end portions, which are
connected to and separate from the carriage, supporting the
drum."

Term 4:  Hollow Drum

The parties dispute the construction for Term 4, the
hollow drum.  Plaintiff's proposed construction is "An elongated
cylindrically shaped assembly with an internal cavity and an
external surface to store one or more cables that can be unwound

by rotational motion." Defendants argue that no construction is necessary.

Claim construction "is not an obligatory exercise in redundancy." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Instead, "[c]laim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement." *Id.* Here, Plaintiff's proposed construction is more difficult to understand than the term itself and will only confuse the jury. There is no need to add that the hollow drum is an "elongated cylindrical assembly with an internal cavity." There is also no need to confuse the jury with the difference between the drum and the drum assembly, which are different terms with different meanings. It does not help to explain the language that is already in the term.

The adopted construction is: "hollow drum."

Term 5:   An elongated hollow drum . . . rotatably mounted on the base member and a cable for simultaneously winding and unwinding the cable on or off the drum grooves when the drum is rotated

9

The parties dispute the construction for Term 5, describing the hollow drum.  Plaintiff's proposed construction is "a hollow drum supported by the base member with a cable in which the cable winds and unwinds on or off of the drum grooves when the drum is rotated."  Defendants argue that no construction is necessary.

While these two constructions are similar, Plaintiff's construction does not add any additional explanation to the claim term.  It eliminates certain easily understood terms such as that the drum must be "elongated."

The adopted construction is:  "an elongated hollow drum . . . rotatably mounted on the base member and a cable for simultaneously winding and unwinding the cable on or off the drum grooves when the drum is rotated."

Term 6:   First means for slideably mounting the base
member to the carriage

The parties agree that this is a means-plus-function element.  However, their constructions for the means-plus-function elements diverge on several key points.  Plaintiff's proposed construction is "a means clause:  the supporting

10

structure is a linear bearing and all equivalents thereof for
the function of connecting the base member to the carriage and
providing relative linear motion between the carriage and the
base member/drum." Defendants' proposed construction is "a
means-plus-function limitation pursuant to § 112, ¶ 6.
Function: slidably mounting the base member to the carriage.
Structure: two slides 45 that (i) are rigidly fastened to the
frame of the carriage and (ii) engage linear bearings 35A that
are mounted into the top portions of the base member's first and
second end portions."

The function in a means-plus-function element must be
explicitly recited in the claim. *JVW Enterprises, Inc. v.
Interact Accessories, Inc.*, 424 F.3d 1324, 1331 (Fed. Cir.
2005). The role of the Court is to "determine what structure,
if any, disclosed in the specification corresponds to the
claimed function" and the specifications "must clearly associate
the structure with the performance of the function." *Id.*

Defendants' proposed function restates the exact
language of the claim. Plaintiff's proposed language only helps
to further explain the claim function language. Therefore, the
function will be "slideably mounting the base member to the

11

carriage providing relative linear motion between the carriage
and the base member."

The issue is how to define the structure.  Plaintiff
advances that there can only be one linear bearing, which has
several embodiments and that is how the base member slides with
respect to the carriage.  However, this interpretation does not
reflect the language in the specification and the drawings.  The
specification and drawings demonstrate that the two slides 45
and linear bearings 35A and 35B are necessary for sliding to
function.  There are multiple embodiments and not all require
two 35As and 35Bs, however all embodiments include two slides 45
and more than one 35A and/or 35B.

The specifications and the drawings collectively
define that the carriage is slideably connected to the base
member "through slides 45, which are rigidly fashioned to the
frame.  The slides engage linear bearings 35A and 35B, mounted
into the top portion of the base 30 vertical members 31 and 32."
'485 Patent 5:47-51.  Figure 3 of the specifications shows how
linear bearings 35A and 35B could both be used to engage with
the slide 45.  Even if Figure 1 only has two 35As and Figure 2

12

has two 35Bs, there are two slides and at least two 35A/B linear
bearings in all embodiments.

The adopted construction is:  "the structure is two
slides 45 that are mounted to the carriage and engage linear
bearings, which can be a combination of 35A and 35B that are
mounted to the top of the base member's first and second end
portions that function to slideably mount the base member to the
carriage providing relative linear motion between the carriage
and the base member."

### Term 7:  Hollow Hub

The parties have similar constructions for this term,
but dispute whether the hollow hub is a drum end cap or a
portion of a drum end cap.  Different areas of the specification
refer to the hollow hub as either the "end cap 14 hub portion"
or "the brake end cap 14."  (Compare, '485 Patent 8:2-14 and
5:7-17.)  The parties can each cite to these conflicting
specifications.

The specification notes that the "brake end cap 14
elongated hub, which hub is hollow so that the screw 51 can
pass, via the hollow hub, inside the drum 11, which is also
13

hollow." ('485 Patent 4:37-41.)  This language demonstrates that the hub is a portion of the brake end cap and not the entire end cap.

The adopted construction is:  "a portion of the drum end cap with an elongated opening to allow passage of the elongated screw."

## Term 8:   A hollow hub rotatably journalled at the first end portion of the base member

Here the parties dispute whether this claim term requires construction.  While the claim term is clear, Plaintiff's construction provides additional detail and clarity for the jury.

The adopted construction is:  "a portion of the drum end cap with an elongated opening located at the first end portion of the base member to allow passage of the elongated screw."

## Term 9:   Second means for rotating the drum relative to the base member such that the base member with its drum and the carriage can move with respect to each other

14

The parties agree that this is a means-plus-function element.  However, their constructions for the means-plus-function elements differ.  Again, the parties agree on the function, "rotating the drum relative to the base member such that the base member with its drum and the carriage can move with respect to each other."

However, the parties dispute the structure necessary for this function.  First, the parties dispute what type of screw is needed to rotate the drum.  Both embodiments will be permitted, either a power or ACME screw.  Next, the parties agree that a motor 37 is required.  The base member is included in the claim, so it will also be included in the construction. The slides and linear bearings will not be included in the construction for this term as they were included in Term 6 (the first means) and are not necessary for the function of the second means of rotation and lateral movement of the drum.

The adopted construction is:  "the structure is a motor 37, power or ACME screw, drum, carriage and base member that function to rotate the drum relative to the base member such that the base member with its drum and the carriage can move with respect to each other."

15

Term 10: Elongated screw

The parties dispute whether construction is needed for this term. Plaintiff's proposed construction to explain that this is a power screw with "a length that permits the drum to wind (and store) and unwind the cable or cables synchronized with lateral movement. However, this construction only adds confusion to a simple term. An elongated screw is a long screw and the parties can explain its function to the jury without the need for additional construction of this term.

The adopted construction is: "elongated screw."

Term 11: An elongated screw having a first end non-rotatably mounted to the carriage

The parties also dispute whether construction is needed for this term. Plaintiff's proposed construction adds language about the drum winding and unwinding the cables. This language is not needed to adequately understand the claim language and will only confuse the jury with further technical terms that are not required by the claim or clearly are in the specifications.

16

The adopted construction is: "an elongated screw having a first end non-rotatably mounted to the carriage."

> Term 12: Said hollow hub and hollow drum being sized such that the screw can move into the hollow hub to allow the hollow drum to receive the screw as the cables unwind from or wind up on the drum

The parties dispute whether construction is needed for this term. Plaintiff's proposed construction removes references to the hollow hub and adds information about the drum end cap that is not in the claim. This language will only confuse the jury. No construction of this term is necessary.

The adopted construction is: "said hollow hub and hollow drum being sized such that the screw can move into the hollow hub to allow the hollow drum to receive the screw as the cables unwind from or wind up on the drum."

**Defendants' Summary Judgment Motion for Non-Infringement Is Denied**

For literal infringement, Plaintiff bears the burden of proving that "each limitation of the claim must be present in

17

the accused device." *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001).

In addition to literal infringement, an accused device can infringe under the doctrine of equivalents. This doctrine states that "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1016 (Fed. Cir. 2006) (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997)). The Supreme Court has noted that without the doctrine of equivalents, "Unimportant and insubstantial substitutes for certain elements could defeat the patent, and its value to inventors could be destroyed by simple acts of copying." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 731, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002).

The test for the doctrine of equivalents, known as the function-way-result test, asks "whether the accused device performs substantially the same function in substantially the

18

same way to obtain substantially the same result as the claim

limitation." *VirnetX, Inc. v. Cisco Systems, Inc.*, 767 F.3d

1308, 1322 (Fed. Cir. 2014). If that is the case, then "they

are the same, even though they differ in name, form, or shape."

*Warner-Jenkinson Co.*, 520 U.S. at 35 (quoting *Union Paper-Bag*

*Machine Co. v. Murphy*, 97 U.S. 120, 125, (1878)).

## Summary Judgment is Denied as to whether the Accused Vortek Product Contains an Infringing Base Member

The parties dispute whether the accused Vortek winch

has an infringing base member. The claim defines the term as "a

base member having first and second end portions." This term

was constructed as: "One or more components of the winch,

including first and second end portions, which are connected to

and separate from the carriage, supporting the drum."

Under literal infringement, "each limitation in the

asserted claim [must be] found present in the accused device or

process." *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d

1575, 1583 (Fed. Cir. 1995). Here, to find literal infringement

the Vortek winch must have all of the elements of the claim

construction for the base member, which is not the case here

because the Vortek lacks a horizontal member.

19

The accused Vortek winch does not have one contiguous base member, but instead has first and second end portions that Plaintiff claims comprise the base member. The key dispute is whether the components of the base member must be connected to one another or can be separately connected to the carriage. Either the first and second vertical end portions must be connected by a horizontal member or the horizontal member is only one embodiment and is not dispositive. For literal infringement, there must be a horizontal member.

Plaintiff argues that a horizontal member cannot be a requirement for the '485 Patent when it was not included in the claim. "[I]t is important to keep in mind that the purposes of the specification are to teach and enable those of skill in the art to make and use the invention," not to define the limits of a claim term. *Phillips*, 416 F.3d at 1323. Olaf Sööt argues that here, to mandate that an infringing device have a horizontal member based on the specifications would be defining the limits of the claim term instead of merely serving as a dictionary for how to interpret the claim.

However, the patent specification is "always highly relevant to the claim construction analysis" has been described as "a dictionary when it expressly defines terms used in the claims" and "the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Here the parties hotly dispute what it means to have a base member with first and second end portions, which is not clear on its face.

All of the drawings displaying preferred embodiments of the winch in the specifications (Figures 1, 2, 7, and 8) show a version of the winch with a horizontal member. While the horizontal member is not included in the actual claim, it is included in the specifications. For example, one specification describes the base (number 30 in the drawings) as "the vertical members 31 and 32 incorporate the geometry for all weld preparations necessary for welding them to the horizontal member 33." ('485 Patent at 5:32-34.) The specification notes, "[O]ther means for constructing the base 30, or connecting its components to each other, can be used." ('485 Patent at 5:39-40.) The specification clearly envisioned connecting the components of the base member together and not having them be separate.

21

There is no literal infringement in this case because evaluating the claim language with the help of the specifications, the '485 Patent described a base member with a horizontal member. The Vortek winch does not have a base member and therefore it is not literally infringing.

However, the Vortek winch's base member is infringing under the doctrine of equivalents. Finding that there is no infringement for having a base member that supports the drum, but lacks a horizontal member would allow, "Unimportant and insubstantial substitutes for certain elements could defeat the patent." *Festo Corp.*, 535 U.S. at 731. The test for the doctrine of equivalents asks "whether the accused device performs substantially the same function in substantially the same way to obtain substantially the same result as the claim limitation." *VirnetX, Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308, 1322 (Fed. Cir. 2014).

Here, the Vortek contains all of the required elements of a base member. The constructions requires: (1) one or more components, including first and second end portions; (2) which are connected to and separate from the carriage; and (3) which

22

support the drum. The Vortek product satisfies all three prongs under the doctrine of equivalents. First, the Vortek has both an end portion base member and a front portion base member. Second, both end portions are connected to the carriage (and are separate from the carriage). Third, these components both support the drum in the same way that the specifications in the '485 Patent support the drum. Under the doctrine of equivalents, these two designs "are the same, even though they differ in name, form, or shape." *Warner-Jenkinson Co.*, 520 U.S. at 35 (quoting *Union Paper-Bag Machine Co. v. Murphy*, 97 U.S. 120, 125, (1878)).

## The Accused Vortek Product Has an Equivalent "First Means for Slideably Mounting the Base Member to the Carriage"

The parties dispute whether the Vortek has the means-plus-function clause "first means for slideably mounting the base member to the carriage." The function of this term was constructed as "slideably mounting the base member to the carriage providing relative linear motion between the carriage and the base member." The structure was constructed as "two slides 45 that are mounted to the carriage and engage linear bearings, which can be a combination of 35A and 35B that are

23

mounted to the top of the base member's first and second end portions."

The parties agree that the claim function should be interpreted as "providing relative linear motion between the carriage and the base member." (See Plaintiff's Proposed Construction, Term 6, Dkt. No. 63, Ex. 2.) The Defendants argue that the accused Vortek winch does not violate this function because one of the Vortek's base member end portions is bolted in place and does not allow for any relative motion between the carriage and the base member.

In order to make a finding of literal infringement for a means-plus-function clause, the accused device must "perform a function identical to that identified in the means clause." *Ishida Co. v. Taylor*, 221 F.3d 1310, 1316-17 (Fed. Cir. 2000). Here, the accused Vortek winch does not perform an identical function to the means clause. Unlike all of the specifications and drawings, which show relative linear motion between the carriage and the base member through two slides 45 and linear bearings 35A and 35B (See Figures 1, 2, 3, 4, 5, 7, 8), the Vortek winch does not have linear motion between the carriage and base member because the front end vertical member is fixed

24

and bolted to the carriage.  The rear end vertical member in the Vortek winch is connected to the carriage by a slide and linear bearings that allow the rear vertical member to move relative to the carriage just as in the drawings and specifications, such as Figure 3.  There is no literal infringement because the front end portion of the base member cannot move relative to the carriage since the front end vertical member of the base member and the carriage are bolted together.

However, the parties dispute whether there is infringement under the doctrine of equivalents. "Noninfringement under the doctrine of equivalents, although a factual issue, may be determined as a matter of law when no reasonable fact-finder could determine other than that the substitute element plays a role substantially different from the claim limitation." *Unique Coupons, Inc. v. Northfield Corp.*, 12 Fed. Appx. 928, 936 (Fed. Cir. 2001).  Here, the Defendants have not met that burden and the fact-finder must determine whether having one end portion of the base member bolted in place and the other slideably mounted to the carriage is "substantially different."

25

"The proper test" to determine whether the doctrine of equivalents applies to a means-plus-function clause is "whether the differences between the structure in the accused device and any disclosed in the specification are insubstantial." *Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.*, 145 F.3d 1303, 1309 (Fed. Cir. 1998). Another way to state the test for a means-plus-function term is, "The doctrine of equivalents covers accused structures that perform substantially the same function in substantially the same way with substantially the same results. The doctrine of equivalents thus covers structures with equivalent, but not identical, functions." *Ring & Pinion Service Inc. v. ARB Corp. Ltd.*, 743 F.3d 831, 835 (Fed. Cir. 2014).

Here, there is no slide 45 or linear bearing 35A or 35B on the front end base member of the Vortek winch, which is a difference in structure. Further, the front end vertical member is bolted to the carriage. This difference in structure prevents the Vortek winch from having an identical function of the front end base member slideably moving relative to the carriage. However, the back end vertical member does have a slide 45 and linear bearings 35A and/or B. The back end member does slide relative to the carriage in exactly the way that the

26

patent specifications dictate in Figures 1, 2, 3, 4, 5, 7, and 8.

The issue for this claim term is whether having part of the base member slide relative to the carriage and the other part remain bolted in place is a "substantial" difference. *Chiuminatta*, 145 F.3d at 1309. In *Chiuminatta* the difference between using a skid plate and wheels was substantial under the doctrine of equivalents. *Id.* Here, the difference is less substantial than in *Chiuminatta* because the back end member of the Vortek winch slides using exactly the same linear bearing technology described and depicted in the specifications instead of an entirely different technology like wheels or skid plates in *Chiuminatta*.

Likewise, in *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, the Federal Circuit evaluated whether an image viewing system that is a digitized image collected from a fisheye lens camera was equivalent to the accused product. *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1382 (Fed Cir. 2001). The parties disputed whether there was infringement under the doctrine of equivalents because the accused product also produced a circular view of an image, but

27

with no fisheye distortion by using an equirectangular panorama file instead of the fisheye lens camera. *Id.* Those two products have a substantially greater variance in structure because they use entirely different technologies to achieve a similar result as compared to the '485 Patent and the Vortek, which is at least half the identical structure in the base member. There is no dispute that the '485 Patent and the Vortek winches achieve exactly the same result of lifting and lowering scenery for theatres using a motorized winch. While the accused product used an entirely different technology achieving a slightly different end result in *Interactive Pictures*, the Court refused to overturn a jury's determination that "the difference was insubstantial." *Id.* If a jury could find those differences insubstantial, the factfinder in this case should be permitted to make the same determination under the function-way-result test.

Defendants have not shown that "no reasonable fact-finder could determine other than that the substitute element plays a role substantially different from the claim limitation." *Unique Coupons, Inc.*, 12 Fed. Appx. at 936. While there are clear differences in the sliding nature of the front end vertical base member, the differences are not substantial enough

28

to preclude a factfinder determining that there was infringement. *Ring & Pinion*, 743 F.3d at 835. For these reasons, this means-plus-function clause creates a disputed issue of fact for the factfinder to determine.

## The Accused Vortek Product Includes an "Elongated Screw Having a First End Non-Rotatably Mounted to the Carriage"

The parties dispute whether the accused Vortek winch has an infringing "elongated screw having a first end non-rotatably mounted to the carriage." There was no construction necessary for this term.

For this term, the dispute is whether the elongated screw is actually mounted to the carriage. The Vortek winch has an elongated screw that is non-rotatably mounted to what the parties describe as a "tail-end bracket." This bracket is attached to the carriage and is bolted to the front vertical member. The dispute is whether the tail-end bracket is part of the carriage or the base member. If it is a part of the base member, the Vortek is not infringing on the '485 patent. If it is part of the carriage, then the Vortek is infringing.

The claim language does not provide any detail about the difference between the carriage and the base member's first and second end portions.  In the absence of explanation from the claim, "the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean," which includes evaluating a claim term "not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips v. AWH Corp.*, 415 F.3d at 1313-14 (internal citations omitted).

Under literal infringement, the Vortek does not literally infringe because each of the drawings that depict the carriage and base member do not have them attached to one another as one tail-end bracket like in the Vortek winch. However, the accused Vortek construction is infringing under the doctrine of equivalents.  This is because the variances for the elongated screw are "[u]nimportant and insubstantial substitutes" in comparison to the patent specifications.  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. at 731.

30

The carriage can include the tail-end bracket under the doctrine of equivalents because the carriage is more than one piece in each of the embodiments in the specifications.  The pieces of the carriage are connected together just as the tail-end bracket is attached to the carriage in the Vortek winch in Figures 1, 2, 7 and 8.  Figure 1 is described in the specifications as having a "carriage 40 frame 41 [that] is L-shaped comprising a horizontal member 41A and a vertical member 41B."  ('485 Patent at 5:40-42.)  This demonstrates that the '485 Patent covers embodiments of the winch that have several different shapes and sizes of carriage frames.

The test for the doctrine of equivalents, known as the function-way-result test, asks "whether the accused device performs substantially the same function in substantially the same way to obtain substantially the same result as the claim limitation."  *VirnetX, Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308, 1322 (Fed. Cir. 2014).  If that is the case, then "they are the same, even though they differ in name, form, or shape."  *Warner-Jenkinson Co.*, 520 U.S. at 35 (quoting *Union Paper-Bag Machine Co. v. Murphy*, 97 U.S. 120, 125, (1878)).  Here while the carriage does differ in form or shape from the exact configuration in the drawings and specifications, the way in

31

which the elongated screw is non-rotatably mounted to the
carriage is essentially the same and is infringing under the
doctrine of equivalents.

## Summary Judgment is Denied Because a Reasonable Factfinder Could Find Infringement for Each Term

Summary judgment on the issue of non-infringement is
proper when "no reasonable jury could find that every limitation
recited in a properly construed claim either is or is not found
in the accused device either literally or under the doctrine of
equivalents." *Spiel Associates, Inc. v. Gateway Bookbinding
Sys., Ltd.*, No. 03-CV-4696, 2010 WL 546746, at \*6 (E.D.N.Y. Feb.
16, 2010) (citing *PC Connector Solutions LLC v. SmartDisk Corp.*,
406 F.3d 1359, 1364 (Fed.Cir.2005)); see also, *Mich & Mich. TGR,
Inc. v. Brazabra, Corp.*, 128 F.Supp.3d 621, 631 (E.D.N.Y. 2015).
In this case, a reasonable jury could find that the base member,
first means for slideably mounting the base member to the
carriage, and elongated screw having a first end non-rotatably
mounted to the carriage are infringing.  Plaintiff urges the
Court to *sua sponte* find infringement, but Plaintiff has not met
the high burden to show that Defendants made a "woefully
inadequate showing." *Gertrude Newmark Rothschild v. Cree, Inc.*,
711 F.Supp.2d 173, 195 (D. Mass. 2010).

**Conclusion**

Based on the conclusions set forth above and the claim constructions determined by the Court, the motion for summary judgment on non-infringement is denied.

It is so ordered.

New York, NY
October 16, 2016

ROBERT W. SWEET
U.S.D.J.

33