USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: AUG 2 7 2019

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

OLAF SÖÖT DESIGN, LLC,

Plaintiff,

-against-

DAKTRONICS, INC. and DAKTRONICS HOIST INC.,

Defendants.

MEMORANDUM DECISION AND ORDER

15 Civ. 5024 (GBD)

GEORGE B. DANIELS, United States District Judge:

Plaintiff Olaf Sööt Design, LLC ("OST") brought this action against Defendants Daktronics, Inc. and Daktronics Hoist Inc. for infringement of U.S. Patent No. 6, 520, 485 (the "'485 Patent") under the Patent Act, 35 U.S.C. § 271. (Am. Compl., ECF No. 190; Decl. of Kenneth L. Bressler in Supp. of Defs.' Mot. for Summ. J. of Non-Infringement ("Bressler Decl."), Ex. 1 (The '485 Patent), ECF No. 35-1.) The '485 Patent is for a stage scenery winch system that helps to move large sets quickly and efficiently. (the "'485 Patent Winch"). (*Id.*) From December 10 to 18, 2018, Judge Robert W. Sweet presided over a jury trial in this action that resulted in a judgment against Defendants in the sum of $1,702,800.00. (J., ECF No. 327.)

Before this Court are five post-trial motions. Defendants filed a renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) and a motion for a new trial under Federal Rule of Civil Procedure 59(a). (ECF Nos. 329, 346). Plaintiff filed a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), a motion to amend the judgment under Federal Rule of Civil Procedure 59(e), and a motion for attorney's fees under the Patent Act, 35 U.S.C § 285. (ECF Nos. 342, 338, 353.)

Defendants' motions for judgment as a matter of law and for a new trial are DENIED. Plaintiff's motions for judgment as a matter of law and for attorney's fees are DENIED. Plaintiff's motion to amend the judgment is GRANTED.

## I. FACTUAL & PROCEDURAL HISTORY

On February 18, 2003, U.S. Patent Application No. 09/690,116 matured into the '485 Patent and was assigned to Plaintiff. (Bressler Decl., Ex. 1 (The '485 Patent).) The '485 Patent's Abstract provides a brief description of the '485 Patent Winch as follows:

> A motorized fly system winch, drum and carriage combination for raising and lowering, for example, theatre scenery by means of cables and which incorporates functions for emergency braking, for moving the drum in synchronization with relation to the carriage containing cable-guiding means and for driving of a limit switch if desired. The winding and unwinding the cables on or off the drum does not change the cable runs relative to the theatre. The fly system winch can be installed at the sides of the stage, up at the stage gridiron, or above the gridiron. With this combination, counter-weights are unnecessary. The fly system winch is compact and can be economically manufactured.

(*Id.* at 57.) Defendants designed and built winches known as VORTEK Classic Hoists (the "Vortek") that are used by professional theaters, school auditoriums, places of worship, and other performance spaces. (Compl., ECF No. 1, ¶¶ 13–14.)

Plaintiff commenced the instant action against Defendants for patent infringement on June 26, 2015. (*Id.* at 5.) Plaintiff alleged that Defendants engaged in the "manufacture, use, offer for sale, sale, importation, promotion, and/or demonstration of winches [covered by one or more of the '485 Patent claims] including manufacture, marketing and/or sales in New York." (*Id.* ¶ 12.)

Defendants moved for summary judgment on April 29, 2016. (Defs.' Notice of Mot. & Mot. for Summ. J. of Non-Infringement, ECF No. 32.) On May 9, 2016, Plaintiff moved for claim construction on twelve terms appearing in the '485 Patent. (Pl.'s Opening Claim Constr. Br., ECF No. 44.) Judge Sweet ruled on both motions on October 26, 2016, denying summary judgment

and construing the disputed terms in the '485 Patent. (Op. dated Oct. 26, 2016 ("Claim Constr. Op."), ECF No. 72.) Judge Sweet also denied Defendants' motion to reconsider his denial of summary judgment on May 17, 2017. (Op. dated May 17, 2017 ("Recons. of Summ. J. Op."), ECF No. 137.)

On October 26, 2017, Judge Sweet granted Plaintiff's motion to amend the complaint to include a claim of willful infringement under the Patent Act, 35 U.S.C § 271. (Op. dated Oct. 26, 2017, ECF No. 176.) Plaintiff filed an amended complaint on November 7, 2017. (Am. Compl.) Subsequently, Defendants moved for partial summary judgment to establish that they did not *willfully* infringe the '485 Patent. (Defs.' Mot. for Partial Summ. J. of No Willful Infringement, ECF No. 200.) Judge Sweet granted Defendants' motion for partial summary judgment on July 18, 2018 and denied Plaintiff's motion to reconsider on November 27, 2018. (J. re Part. Summ. J., ECF No. 258; Op. dated Nov. 27, 2018, ECF No. 292.)

On December 6, 2018, Judge Sweet granted in part and denied in part the parties' motions *in limine*.[1] (Op. re Mots. *In Limine*, ECF No. 304.) Judge Sweet presided over an eight-day jury trial from December 10 to 18, 2018. (Trial Tr., ECF Nos. 315–326.) The jury returned a verdict

[1] Defendants' filed five motions *in limine* requesting that Judge Sweet preclude Plaintiff from (1) "arguing and presenting evidence on literal infringement"; (2) "referring to the Vortek motor bracket as a 'base member'"; (3) "speculating that Defendants . . . copied the '485 patent"; (4) "stating or implying that Defendant withheld discovery or produced documents in an untimely manner"; and (5) "presenting evidence or arguing concerning the *inter partes* review and Daktronics' withdrawal of its invalidity defense." (Op. re Mots. *In Limine* at 1; Defs.' Mots. *In Limine*, ECF No. 158.) Judge Sweet granted Defendants' motions *in limine* (1), (2), (4), and (5) in full, and motion (3) in part. (Op. re Mots. *In Limine* at 6–11.)

Plaintiff filed two motions *in limine* requesting Judge Sweet to (1) "[e]xclude prior art references and related testimony suggesting or related to the purported invalidity of the '485 patent"; and (2) "[e]xclude Defendant from presenting, relying on, or referring to the settlement agreement entered into between Applied Technology and J.R. Clancy, Inc." (Op. re Mots. *In Limine* at 2; Pl.'s Consol. Mots. *In Limine*, ECF No. 159.) Judge Sweet granted Plaintiff's motion *in limine* (1) in full and denied motion (2) in full. (Op. re Mots. *In Limine* at 12–16.)

in Plaintiff's favor and granted damages in the amount of $1,072,800. (Trial Tr. at 840:13–841:25.) The parties filed post-trial motions between January 7 and March 13, 2019. (Defs.' Notice of Renewed Mot. for J. as a Matter of Law ("Defs.' JMOL Mot."), ECF No. 329; Daktronics' Notice of Mot. for New Trial, or Alt., Remittitur ("Defs.' Mot. for New Trial Mot."), ECF No. 346; Pl.'s Notice of Mot. to Amend the J. ("Pl.'s Mot. to Amend J."), ECF No. 338; Pl.'s Renewed Mot. Pursuant to FRCP 50(b) for J. as a Matter of Law ("Pl.'s JMOL Mot."), ECF No. 342; Pl.'s Mot. for Attorneys' Fees Pursuant to 35 U.S.C. § 285 ("Pl.'s Mot. for Attorney's Fees"), ECF No. 353.)

This case was reassigned to this Court on April 30, 2019 after Judge Sweet's passing. On July 9, 2019, this Court heard oral arguments on the parties' motions for judgment as a matter of law and on Defendants' motion for a new trial.

## II. LEGAL STANDARDS

### A. Rules 50(a) and (b) Motions for Judgment as a Matter of Law.

Federal Rule of Civil Procedure 50(a) permits a court to enter judgment against a party "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. . . ." Fed. R. Civ. P. 50(a)(1). Pursuant to Federal Rule of Civil Procedure 50(b), a party may renew a motion for judgment as a matter of law "[n]o later than 28 days after the entry of judgment." Fed. R. Civ. P. 50(b). When deciding a Rule 50(b) motion, a court may "(1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." *Id.*

However, a Rule 50(b) post-trial motion for judgment as a matter of law "is limited to those grounds that are specifically raised in the prior motion for [JMOL]." *Galdieri-Ambrosini v. Nat'l*

*Realty & Dev. Corp.*, 136 F.3d 276, 286 (2d Cir. 1998) (quoting *Samuels v. Air Transport Local 504*, 992 F.2d 12, 14 (2d Cir. 1993) (internal quotation marks omitted)); *see also AIG Global Sec. Lending Corp. v. Banc of Am. Sec., LLC*, 386 F. App'x 5, 6 (2d Cir. 2010) (finding that a Rule 50 motion "may be renewed after an unfavorable verdict, but limited only to the grounds specifically raised in the prior motion for judgment as a matter of law; new grounds may not be added post-trial").

Therefore, when evaluating a Rule 50(b) motion, courts review "the evidence in the light most favorable to the non-moving party." *Rosioreanu v. City of N.Y.*, 526 F. App'x 118, 119 (2d Cir. 2013). Further, when reviewing the evidence, a court may not "weigh evidence, assess credibility, or substitute its opinion of the facts for that of the jury." *Advance Pharm., Inc. v. United States*, 391 F.3d 377, 390 (2d Cir. 2004) (citing *Vt. Plastics, Inc. v. Brine, Inc.*, 79 F.3d 272, 277 (2d Cir. 1996)). Accordingly, judgment as a matter of law should only be granted where:

> (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it].

*Id.* (citing *Galdieri-Ambrosini*, 136 F.3d at 289).

**A. Rule 59(a) Motion for a New Trial.**

The decision to grant a motion for a new trial, pursuant to Rule 59(a), rests within the "sound discretion of the district court." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 143 (2d Cir. 1998). Such a motion should not be granted unless the court "is convinced that the jury has reached a *seriously erroneous* result or that the verdict is a *miscarriage of justice*." *Kosmynka v. Polaris Industries, Inc.*, 462 F.3d 74, 82 (2d Cir. 2006) (citations omitted) (emphasis added); *see also DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998) (noting that the court should

only grant such a motion when the jury's verdict is "egregious" (citing *Dunlap-McCuller v. Riese Org.*, 980 F.2d 153, 158 (2d Cir. 1992)). "Unlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict." *DLC Mgmt. Corp.*, 163 F.3d at 134. The Court may independently weigh the evidence and, in doing so, the evidence need not be viewed "in the light most favorable to the verdict winner." *Martin v. Moscowitz*, 272 F. App'x 44, 47 (2d Cir. 2008) (citing *DLC Mgmt. Corp.*, 163 F.3d at 134).

**B. Rule 59(e) Motion to Amend the Judgment.**

A party may move to "alter or amend [the] judgment" under Rule 59(e) to add pre- and post-judgment interest. Fed. R. Civ. P. 59(e); *see also Foresco Co. v. Oh*, 337 F. Supp. 3d 304, 306 (S.D.N.Y. 2018) (citing *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175–76 (1989)) ("[A] Rule 59(e) motion to alter or amend a judgment is the proper basis for bringing a request for prejudgment interest."). When evaluating such a motion, "[a] district court has discretion to add prejudgment interest to a jury award as it is not a decision left solely for the jury." *Foresco Co.*, 337 F. Supp. 3d at 306. However, while "Rule 59(e) permits a court to alter or amend a judgment, . . . it may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (citation and internal quotation marks omitted).

The Second Circuit established four factors for evaluating a Rule 59(e) motion: (1) "the need to fully compensate the wronged party for actual damages suffered"; (2) "considerations of fairness and the relative equities of the award"; (3) "the remedial purpose of the statute involved"; and (4) "such other general principles as are deemed relevant by the court." *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 139 (2d Cir. 2000) (citing *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d

1450, 1476 (2d Cir. 1996)). Moreover, the same considerations that "inform the court's decision whether or not to award interest at all should inform the court's choice of interest rate." *Id.*

### C. Motion for Attorney's Fees

Under the Patent Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. This Circuit has defined an "exceptional" case as one that simply "stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 530 (2d Cir. 2018) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). In evaluating an exceptional case, a court must consider "the totality of the circumstances, considering a wide variety of factors, including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* (quoting *Octane Fitness, LLC.*, 572 U.S. at 554 (2014)).

## III. DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW IS DENIED

Defendants' renewed motion for judgment as a matter of law[2] challenges Claim 27(h) of the '485 Patent, which reads:

> said hollow hub and hollow drum being sized such that the screw can move into the hollow hub to allow the hollow drum to receive the screw as the cable unwinds from or winds up on the drum as the object moves to its respective down or up position.

---

[2] Defendants first moved for judgment as a matter of law during trial on December 14, 2018. (Defs.' Pre-Verdict Not. Of Mot. for Judgment as a Matter of Law ("Defs.' Pre-Verdict JMOL Mot."), ECF No. 313.) Judge Sweet heard oral argument that same day and denied the motion without prejudice. (Tr. Trans. at 546:5–547:16, 551:22–25.)

(Defs.' Mem. of Law in Supp. of its Renewed Mot. for J. as a Matter of Law ("Defs.' JMOL Mem."), ECF No. 330, at 7 (citing the '485 Patent, at col. 15, l. 1–15).)

Defendants argue that this Court should grant judgment as a matter of law in their favor for two reasons: (1) "[Claim 27(h)] is *vitiated* by the Vortek shaft, which prevents the hub and *drum from being sized such that the drum can receive the screw*" (the "Vitiation Claim"); and (2) "[Claim 27(h)] cannot capture a winch with a shaft because the use of a shaft was *expressly disclaimed* in the '485 Patent" (the "Disclaimer Claim"). (Defs.' JMOL Mem. at 12, 19.)

A party bringing a motion for judgment as a matter of law must meet a "particularly heavy burden where, as here, the jury has deliberated in the case and actually returned its verdict in favor of the non-movant." *Eastman Kodak Co. v. Ricoh Co., Ltd.*, 4 F. Supp. 3d 574, 577 (2d Cir. 2014) (citing *Carroll v. Cty. of Monroe*, 712 F.3d 649, 651 (2d. Cir. 2013)). Defendants have not met this burden here on either the Vitiation Claim or the Disclaimer Claim. The Vitiation Claim fails because the Vortek performs "substantially the same function, in substantially the same way" as the '485 Patent Winch, thereby meeting the standard for the doctrine of equivalents. *Romag Fasteners, Inc. v. Mitzi Intern. Handbag & Accessories, Ltd.*, 323 F. Supp. 2d 512, 518 (2d Cir. 2004) (citation omitted). Defendants' Disclaimer Claim also fails because they did not raise it in their original motion for judgment as a matter of law at the close of trial. *See Tolbert v. Queens College*, 242 F.3d 58, 70 (2d Cir. 2001) ("The posttrial motion is limited to those grounds that were 'specifically raised in the prior motion for [JMOL].'" (quoting *McCardle v. Haddad*, 131 F.3d 43, 51 (2d Cir. 1997))).

**A. Defendants' Vitiation Claim Fails.**

Under the doctrine of equivalents, an accused device may infringe a patented invention even when "the accused device does not contain every element of the patented invention, . . . if the

differences between the claimed invention and the accused device are *insubstantial*." *Romag Fasteners, Inc.*, 323 F. Supp. 2d at 518 (internal quotation marks omitted) (emphasis added). The Second and Federal Circuits have found differences to be "insubstantial" where, for each disputed element, the accused product performs "substantially the same *function*, in substantially the same *way*, to give substantially the same *result*" (the "function-way-result test"). *Id.* (citing *Hormone Research Found., Inc. v. Genentech, Inc.*, 904 F.2d 1558, 1564 (Fed. Cir. 1990) (emphasis added)). Moreover, "[t]hese circumstances are met when the alleged infringer seeks to appropriate the invention with minor modifications to avoid the literal language of the claims." *Carman Indus., Inc. v. Wahl*, 724 F.2d 932, 942 (Fed. Cir. 1983).

Vitiation is best understood not as "an exception to the doctrine of equivalents, but instead [as] a legal determination that 'the evidence is such that no reasonable jury could determine two elements to be equivalent.'" *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1347 (Fed. Cir. 2013) (quoting *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012)); *see also Cadence Pharm. Inc. v. Exela PharmSci Inc.*, 780 F.3d 1364, 1371 (Fed. Cir. 2015) (defining vitiation as a "legal conclusion of a lack of equivalence based on the evidence presented and the theory of equivalence asserted"). In fact, "the proper inquiry for the court is to apply the doctrine of equivalents, asking whether an asserted equivalent represents an 'insubstantial difference' from the claimed element, or 'whether the substitute element matches the "function," "way," and "result" of the claimed element.'" *Brilliant Instruments, Inc.*, 707 F.3d at 1347 (quoting *Deere & Co.*, 703 F.3d at 1349). The Federal Circuit also notes that when conducting a vitiation analysis, "[c]ourts should be cautious not to shortcut this inquiry by identifying a 'binary' choice in which an element is either present or 'not present.'" *Deere & Co.*, 703 F.3d at 1356.

Here, the jury had ample evidence to find that the Vortek "performed substantially the same function, way and result as provided by the hub/drum arrangement of the '485 patent." (Pl.'s Opp'n to Daktronics' Renewed Mot. Pursuant to FRCP Rule 50(b) for J. as a Matter of Law ("Pl.'s JMOL Opp'n"), ECF No. 336, at 18; Trial Tr. 170:16–172:16.) The jury also concluded that stopping the screw two inches from the plane of the grooved portion of the Vortek did not make a substantial difference. (Pl.'s JMOL Opp'n at 18; Trial Tr. 841:12–21.) In other words, the jury found that these differences between the hollow hubs in the '485 Patent Winch and the Vortek are *insubstantial*. *See Romag Fasteners, Inc.*, 323 F. Supp. 2d at 518. Accordingly, the jury found that the Vortek's hollow hub is equivalent to the '485 Patent Winch's hollow hub.

Defendants nonetheless allege that the Vortek's shaft vitiates Claim 27(h) of the '485 Patent because the "shaft causes the Vortek to be the *antithesis* of [Claim 27(h)]." (Defs.' JMOL Mem. at 12 (emphasis added).) This is because the Vortek's shaft is solid, which "prevents the hollow hub and hollow drum being sized such that the drum can receive the screw." (*Id.* at 12.) In short, Defendants argue that if the Vortek's shaft prevents the screw from entering the drum, the Vortek's hub and drum are the antithesis to, or opposite of, the '485 Patent Winch's hollow hub, as described in Claim 27(h). (*Id.* at 18.)

However, "the determination of equivalence depends not on labels like 'vitiation' and 'antithesis' but on the proper assessment of the *language of the claimed limitation* and substantiality of whatever relevant differences may exist in the accused structure." *Cadence Pharm.*, 780 F.3d at 1372 (emphasis added). Moreover, where a reasonable trier of fact concluded that a process is "insubstantially different from that recited in the claims," as the jury did in this case, "the argument that a claim limitation is vitiated by the district court's application of the doctrine of equivalents is both incorrect and inapt." *Id.*

To properly assess the "language of the claimed limitation," this Court must consider the exact language defining the '485 Patent Winch's hollow hub and drum in the '485 Patent. Here, all the descriptions of the hollow hub unambiguously indicate that the hollow hub is *part of*, not *separate from*, the drum. The language of the '485 Patent is unambiguous in describing the hollow drum as "drum 11," which "*can be constructed of* one tubular member 12, one drive end cap 13, *and one brake end cap 14*, all welded together." (Bressler Decl., Ex. 1 (The '485 Patent) at col. 5, l. 7–9 (emphasis added).) The '485 Patent goes on to state, "the cable drum 11 is supported from bearing 39 by an elongated hub, *part of the cable drum 11 brake end cap 14*." (*Id.* at col. 3, l. 59–61 (emphasis added).) It also states that "[a] nut 53 is non-rotatably mounted to the drum assembly 10 brake end cap 14 elongated hub, which hub is hollow so that the screw 51 can pass, *via the hollow hub, inside the drum 11, which is also hollow*." (*Id.*, at col. 4, l. 37–41 (emphasis added).) Moreover, Judge Sweet construed the hollow hub as "a *portion of the drum end caps* within an elongated opening to allow passage of the elongated screw." (Claim Constr. Op. at 14 (emphasis added).) Accordingly, as Plaintiff correctly points out, because of this construction of Claim 27(h), "the Vortek hub/drum assembly unquestionably 'receives the screw' as found by the jury." (Pl.'s JMOL Opp'n at 1.)

Furthermore, Plaintiff convincingly argues that "construing the hub as separate from the drum would render several claim terms unintelligible." (*Id.* at 16.) Claim 27(g) of the '485 Patent reads "said [elongated] screw extending *mainly outside of the hollow drum* when the cable is wound up on or unwound from the drum." (Bressler Decl., Ex. 1 (The '485 Patent) at col. 15, l. 54–57.) Figure 2 in the '485 Patent depicts the screw as "*completely* outside the tubular member 12 (the 'drum' in Daktronics' view) while still *partially* within the hub. . . . As such, the hollow hub must be *part of* the hollow drum." (Pl.'s JMOL Opp'n at 16 (emphasis added).)

Plaintiff's analogy is also helpful: "the drum includes a hollow hub" is akin to "the car includes a trunk," such that "if you place a suitcase in the trunk the car 'receives the suitcase.'" (Pl.'s JMOL Opp. at 6 n.2.) Defendants nonetheless reiterate that the hollow hub is separate and apart from the hollow drum by attempting to repurpose Plaintiff's analogy. (Defs.' Reply in Supp. of its Renewed Mot. for J. as a Matter of Law ("Defs.' JMOL Reply"), ECF No. 362, at 1.) Defendants argue that inserting a suitcase in a trunk large enough to fit it entirely (the "Vortek Car") is "substantially different" from inserting a suitcase in a trunk that is so small that the suitcase fills the trunk and part of the back-passenger compartment (the "OST Car"). (*Id.*)



*OST Car*



*Vortek Car*

(*Id.*) According to Defendants, this comparison is equivalent to inserting a screw into a hollow hub large enough to fit it entirely (the Vortek Winch), as opposed to inserting a screw in a hollow hub that is so small that the screw fills the hollow hub and part of the hollow drum (the '485 Patent Winch). (*Id.*)




*'485 Patent Winch*




*Vortek Winch*

(Defs.' July 9, 2019 Oral Arg. Presentation, slides 14, 17.)

Defendants' further attempt to repurpose Plaintiff's analogy by adapting the language of Claim 27 (h) using car components: "said hollow *trunk* and hollow *passenger compartment* being sized such that the *suitcase* can move into the *hollow trunk* to allow the hollow *passenger compartment* to receive the suitcase." (Defs.' JMOL Reply at 1 (emphasis added).) However, this adaptation misconstrues the proper construction of Claim 27(h)—supported by the overwhelming evidence in the language of the '485 Patent—which is that the hollow hub is *part of* the hollow drum. Accordingly, the correct adaptation of Claim 27 (h) using car components is: said hollow *trunk* and hollow *car* being sized such that the *suitcase* can move into the hollow *trunk* to allow the hollow *car* to receive the suitcase. If a suitcase is in a trunk, then it is in a car, much like if a screw is in the hub, then it is in the drum.

The proper construction of Claim 27(h) also undermines Defendants' argument that the shaft in the Vortek drum makes it "impossible for the screw to pass into the drum." (Defs.' JMOL Mem. at 18.) In fact, if the '485 Patent Winch contained a shaft akin to that in the Vortek, it would make it impossible for the screw to pass into tubular member 12, not drum 11. (Bressler Decl., Ex. 1 (The '485 Patent) at col. 5, 1. 7–9, fig. 2.) This is because the screw would still be able to enter the end cap (hub) 14, which is *part of* drum 11. (*Id.* at col. 5, 1. 7–9.) Therefore, as Plaintiff properly points out, given the "overwhelming evidence that the *hollow drum* necessarily *includes*

its *hub* . . . when the 'screw' moves into the 'hub' in the Vortek product, the drum literally 'receives' the screw." (Pl.'s JMOL Opp'n at 16.)

Defendants point to several cases where the Federal Circuit found no infringement under the doctrine of equivalents due to claim vitiation, but these cases are inaposite. (Defs.' JMOL Mem. at 14–17 (collecting cases).) As Plaintiff correctly points out, Defendants' analysis is "dominated by cases describing vitiation without acknowledging that each case stands on its own facts." (Pl.'s JMOL Opp'n at 17.) Specifically, the cases that Defendants rely on involve findings of opposite meaning as opposed to limitations of positional degree and are therefore not dispositive of this case. *See e.g.*, *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948 (Fed. Cir. 1993) (finding a "hollow straw-shaped" fiber forming element is the opposite of a "solid fiber" of a different shape); *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091 (Fed. Cir. 2000) (finding that "majority" is the opposite of "minority"); *Asyst Tech. v. Emtrak Inc.*, 402 F.3d 1188 (Fed. Cir. 2005) (concluding that the "mounted" limitation is the opposite of "unmounted"); *Planet Bingo, LLC v. GameTech Intern., Inc.*, 472 F.3d 1338 (Fed. Cir. 2006) (determining that the winning combination "before" the first ball dropped is the opposite of doing so "after" the ball dropped).

In sum, the jury relied on ample evidence that the hollow drum and the hollow hub are not separate entities for purposes of receiving the elongated screw. In fact, the text of the '485 Patent clearly establishes that the hollow hub is *part of* the drum. Therefore, the jury in this case found that the Vortek winch has an equivalent to Claim 27(h). (Trial Tr. 841:12–21.) Separate and apart from the overwhelming evidence, significant deference is given to a jury's verdict and Defendants have an extremely heavy burden to overturn such a verdict. *See Eastman Kodak Co.*, 4 F. Supp. 3d at 577; *Cadence Pharm. Inc.*, 780 F.3d at 1372. After reviewing the underlying evidence, this Court determines that Defendants have not met this heavy burden.

**B. Defendants' Disclaimer Claim Fails.**

Where a claim has not been raised in the original Rule 50(a) motion for judgment as a matter of law, it cannot be asserted in a renewed Rule 50(b) motion. *See Holmes v. United States*, 85 F.3d 956, 962 (2d Cir. 1996) ("Together, Rules 50(a) and (b) 'limit the grounds for judgment [as a matter of law] to those specifically raised in the prior motion for a directed verdict.'") (quoting *Lambert v. Genesee Hosp.*, 10 F.3d 46, 54 (2d Cir. 1993)). This is in part because the "earlier motion informs the opposing party of the challenge to the sufficiency of the evidence and affords a clear opportunity to provide additional evidence that may be available." *Lore v. City of Syracuse*, 670 F.3d 127, 153 (2d Cir. 2012) (citation omitted). The Second Circuit has held that this "specificity requirement is obligatory." *Holmes*, 85 F.3d at 962 (citation omitted).

Defendants did not assert their Disclaimer Claim in their pre-verdict motion for judgment as a matter of law. (Defs.' Pre-Verdict Not. of Mot. for Judgment as a Matter of Law ("Defs.' Pre-Verdict JMOL Mot."), ECF No. 313.) While this Court may nevertheless "grant a motion to alter or amend a judgment 'to correct a clear error of law or prevent manifest injustice,'" *Guzman v. Jay*, 303 F.R.D. 186, 196 (S.D.N.Y. 2014) (quotinf *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004)), this case presents neither.

Defendants argue that Plaintiff was put on notice of the Disclaimer Claim through a summary judgment motion that Defendants made *before* trial, and that the claim is therefore permissible. (Defs.' JMOL Reply at 8.) But that is not the standard that Rule 50 requires. Rather, Rule 50 unequivocally states that "[a] motion for judgment notwithstanding the verdict will not lie unless it was preceded by a motion for a directed verdict made at the close of all the evidence." Fed. R. Civ. P. 50(b) (1963 Am.). Defendants attempt to argue that they are entitled to an exception to this rule based on "legal error" and to prevent "manifest injustice." (Letter from Domingo M.

Llagostera dated Jul. 25, 2019, ECF No. 402, at 1–2.) However, this Court does not find that "relieving defendants of their procedural default is necessary to avoid injustice" in this case. *Kirsch v. Fleet St. Ltd.*, 148 F.3d 149, 164 (2d Cir. 1998). Defendants had ample opportunity to present their case to the jury. The jury nonetheless found that the Vortek had an equivalent to Claim 27(h). (Trial Tr. 170:16–172:16.)

Accordingly, upon reviewing the underlying evidence, Defendants' motion for judgment as a matter of law is DENIED.

## IV. DEFENDANTS' MOTION FOR A NEW TRIAL IS DENIED

Defendants move for a new trial pursuant to Rule 59 on four grounds: (1) "the jury's doctrine of equivalents findings for each of the four disputed claim elements are against the great weight of the evidence"; (2) "the Court's preclusion of prior art . . . was unfairly prejudicial to [Defendants] and resulted in a miscarriage of justice"; (3) "the jury's damages award was excessive"; and (4) "the Court charged the jury erroneously by striking [Defendants'] instruction on claim vitiation." (Defs.' Mem. of Law in Supp. of Mot. for New Trial, or Alternatively, Remittitur ("Defs.' New Trial Mem."), ECF No. 347, at 2.)

"[A] trial court should not grant a motion for a new trial unless it is 'convinced that the jury . . . reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" *Ali v. Kipp*, 891 F.3d 59, 64 (2d Cir. 2018) (quoting *Amato v. City of Saratoga Springs*, 170 F.3d 311, 314 (2d Cir. 1999)). Defendants point out that a "trial judge may overturn a jury's verdict, even where there is 'substantial evidence' to support it.'" *United States v. Landau*, 155 F.3d 93, 104 (2d Cir. 1998) (citations omitted). However, while judges have the power and ability to "weigh the evidence . . . [and] consider the credibility of witnesses," *Landau*, 155 F.3d at 104, "judges should not become a '13th juror'" when doing so, *TradeCard, Inc. v. S1 Corp.*, 509 F. Supp. 2d

304, 323 (S.D.N.Y. 2007) (quoting *Akermanis v. Sea-Land Service, Inc.*, 521 F. Supp. 44, 48 (S.D.N.Y. 1981)). As such, "motions for new trials should rarely be granted" and the standard for doing so is especially high for jury verdicts that "'should rarely be disturbed.'" *TradeCard*, 509 F. Supp. 2d at 323 (quoting *Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 635 (2d Cir. 2002)).

In this case, there was no "miscarriage of justice," nor was the jury "seriously erroneous" in finding equivalent elements in the Vortek and the '485 Patent Winch. Defendants' motion for a new trial is therefore DENIED.

### A. The Jury's Verdict for the Four Disputed Claims Was Not Against the Great Weight of the Evidence.

Finding infringement is a two-step process: (1) "the court must construe the asserted claims as a matter of law to ascertain their meaning and scope," and (2) "the claims as construed are compared to the allegedly infringing device." *Dawn Equip. Co. v. Kentucky Farms Inc.*, 140 F.3d 1009, 1014 (Fed. Cir. 1998). "Each claim limitation must [also] be present in the accused product, literally *or* equivalently." *Id.* (emphasis added).

Under the doctrine of equivalents, the "determination of equivalence should be applied as an objective inquiry on an element-by-element basis." *Regeneron Pharm., Inc. v. Merus B.V.*, No. 14 Civ. 1650 (KBF), 2014 WL 5463376, at *3 (S.D.N.Y. 2014) (quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997)). During this inquiry, the patent holder must establish that each disputed element satisfies the "function-way-result test." *See Romag Fasteners, Inc.*, 323 F. Supp. 2d at 518 ("The patent holder must establish that with respect to each disputed element the accused product performs 'substantially the *same function*, in substantially the *same way*, to give substantially the *same result*.'" (quoting *Hormone Research Found., Inc. v. Genentech, Inc.*, 904 F.2d 1558, 1564 (Fed. Cir. 1990)) (emphasis added)); *Warner-Jenkinson Co.*,

520 U.S. at 39 (holding that the "function-way-result test" is "suitable for analyzing mechanical devices").

*a. Claim 27(b): The "Base Member" Element.*

Claim 27(b) is "a base member having first and second end portions." (Bressler Decl., Ex. 1 (The '485 Patent) at col. 15, l. 32.) Judge Sweet defined "base member" as "one or more components of the winch, including first and second end portions, which are connected to and separate from the carriage, supporting the drum." (Claim Constr. Op. at 8.)

Defendants make three arguments as to why the jury's verdict regarding Claim 27(b) was "seriously erroneous" and a "miscarriage of justice": (1) "[Plaintiff's doctrine of equivalents] analysis for the base member completely ignored the Court's claim construction requiring a horizontal member"; (2) "[Plaintiff] did not offer evidence to prove the claimed base member way is substantially similar to the Vortek's base member way"; and (3) "the 'base member' element has been vitiated." (Defs.' New Trial Mem. at 5–6.)

As to Defendants' first argument, Judge Sweet noted during claim construction that "for *literal infringement*, there must be a horizontal member." (Claim Constr. Op. at 20 (emphasis added).) But the '485 Patent is clear that while a horizontal member *may* be used to connect the base, "*other means* for constructing the base 30, or connecting its components to each other, *can be used*." (Bressler Decl., Ex. 1 (The '485 Patent) at col. 5, l. 37–39 (emphasis added).) Accordingly, in ruling on Defendants' summary judgment motion, Judge Sweet held that "the Vortek winch's base member is infringing under the doctrine of equivalents" because to find "that there is no infringement for having a base member that supports the drum, but lacks a horizontal member would allow '[u]nimportant and insubstantial substitutes for certain elements [to] defeat the patent.'" (Claim Constr. Op. at 22 (quoting *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki*

*Co.*, 535 U.S. 722, 731 (2002)); Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for New Trial or Remittitur ("Pl.'s New Trial Opp'n"), ECF No. 367, at 3.)

Defendants' expert Dr. Charles Garris testified at trial that the base member functions provide: (1) "slideable support," (2) "rigidity," and (3) "the ability to mount an overspeed break", which is achieved "through the horizontal member." (Trial Tr. 499:1–24; Defs.' New Trial Mem. at 5.) Defendants attempt to use this testimony to argue that the Vortek does not have a horizontal member and that it therefore "does not have the rigidity required nor the ability to hold a[n] [overspeed] break." (Defs.' New Trial Mem. at 5–6.) But Plaintiff properly points out that "the overspeed brake is not in asserted Claims 21 or 27; and is part of an alternate configuration not at issue in this case." (Pl.'s New Trial Opp'n at 4.) Moreover, the horizontal member is merely one means of connecting the base, and the '485 Patent specifically contemplates that other means "can be used." (Bressler Decl., Ex. 1 (The '485 Patent) at col. 5, 1. 37–39.) As such, Defendants' argument goes against Judge Sweet's construction of Claim 27(b) and the language of the '485 Patent.

Regarding their second argument, Defendants assert that "there is absolutely no evidence that the alleged Vortek base member is substantially the same as the claimed base member." (Defs.' New Trial Mem. at 6 (emphasis omitted).) But this argument ignores the evidence and testimony presented at trial. In fact, Plaintiff testified specifically as to how the '485 Patent Winch's base member compares to the "function," "way," and "result" of the Vortek base member, concluding that the two base members are equivalent in all aspects. (Trial Tr. 138:16–139:20.) Accordingly, the jury was given sufficient evidence to appropriately reach a verdict that the '485 Patent Winch's base member and the Vortek base member are equivalent.

Defendants' finally argue that Claim 27(b) was vitiated, again making an inappropriate binary argument that "two elements likely are not insubstantially different when they are polar opposites." (Defs.' New Trial Mem. at 7 (citing *Brilliant Instruments*, 707 F.3d at 1347).) Yet, the Federal Circuit has rejected precisely this type of binary analysis. (Pl.'s New Trial Opp'n at 5); *see Deere & Co.*, 703 F.3d at 1356. Defendants have not met their burden of showing how the '48 Patent Winch's base member is the "exact opposite" of the Vortek's base member. They also fail to adequately challenge how it meets the "function-way-result" test.

Accordingly, Defendants have not shown that the jury's verdict regarding Claim 27(b) was "seriously erroneous," "a miscarriage of justice," or against the great weight of the evidence.

*b. Claim 27(d): The "First Means Structure" Element.*

Judge Sweet construed Claim 27(d), which describes the '485 Patent Winch's "first means structure," as follows:

> [T]he structure is two slides 45 that are mounted to the carriage and engage linear bearings, which can be a combination of 35A and 35B that are mounted to the top of the base member's first and second end portions that function to slideably mount the base member to the carriage providing relative linear motion between the carriage and the base member.

(Claim Constr. Op. at 13.) Defendants provide a diagram of the first means structure in their motion for a new trial:




*The '485 Patent Winch*




*The Vortek Winch*

(Defs.' New Trial Mem. at 8.) Defendants argue that Claim 27(d) does not meet the "function-way-result" test and that the Vortek's first means structure is therefore not equivalent to the claimed first means element. (*Id.* at 8–11.)

As to the first means structure's "function", Defendants claim that because the "tail base portion of the Vortek is affixed, the so-called Vortek base member cannot slide relative to the carriage as required by the Court's construction." (*Id.* at 9.) But this again misconstrues the doctrine of equivalents. Indeed, Judge Sweet denied summary judgment to Defendants on this exact issue because a "reasonable factfinder could find the Vortek's design . . . [contained] an 'insubstantial structural difference' that is structurally equivalent in performing an equivalent function to the '485 Patent.'" (Recons. of Summ. J. Op. at 5; Pl.'s New Trial Opp'n at 7 (citation omitted).) At trial, Plaintiff described how the Vortek's first means structure performs substantively the same "function" as the '485 Patent Winch's first means structure because the drum is allowed to move relative to the carriage. (Trial Tr. 142:4–9, 148:21–23, 149:5–14; Pl.'s New Trial Opp'n at 6.) Dr. Garris agreed that moving the drum laterally "is essential to any zero-fleet angle winch." (Trial Tr. 574:5–15.) Accordingly, the jury was presented with sufficient evidence to reasonably conclude that the first means structure's "function" is equivalent in the Vortek and the '485 Patent Winch.

Plaintiff offered evidence at trial that the '485 Patent considers two "ways" to structure the first means structure in "three-bearing and four-bearing arrangements." (Trial Tr. 99:2–100:3, 143:13–17, 143:23–144:15; Pl.'s New Trial Opp'n at 7.) Dr. Garris also confirmed this in his trial testimony, stating: "Yes. The patent talks about a three-bearing system." (Trial Tr. 586:3–12.) Plaintiff also offered testimony that "the Vortek employed the three-bearing arrangement that uses the same linear bearings disclosed in the '485 patent—with two linear bearings on the motor bracket and one linear bearing on the screw end bracket." (Pl.'s New Trial Opp'n at 7; Trial Tr. 144:19–145:25, 146:6–10.)




*The '485 Patent*




*The Vortek*

(Pl.'s New Trial Opp'n at 7–8.) In short, the only clear difference between the first means structures in the '485 Patent Winch and the Vortek is the placement of the third bearing. This difference is not substantial because both structures allow the "motor end base member—and, critically, its drum—to move with respect to the carriage." (*Id.* at 8.) Based on this evidence, a reasonable jury could find that the "ways" in which these two first means structures move the base member are equivalent.

Defendant finally argues that the "result" of the first means structure in the '485 Patent Winch is not equivalent to the "result" of the Vortek's first means structure because the "[c]ourt defined the first means as allowing the base to move, not the drum." (Defs.' New Trial Mem. at 10–11.) Plaintiff testified during trial, however, that "the drum [in both structures] is moving in

its longitudinal axis with respect to the carriage while it's being supported laterally in all other directions." (Trial Tr. 150:25–151:4.) In short, relying on this evidence, the jury reasonably found that the alleged differences in "results" between the two first means structures were insubstantial.

Accordingly, while the first means structures in the '485 Patent Winch and the Vortek are not literally the same, a reasonable fact finder could (and did) find them to be equivalent under the "function-way-result" test.

c. *Claim 27(e): The "Hollow Hub" Element.*

Judge Sweet construed "hollow hub" as "a portion of the drum end cap with an elongated opening to allow passage of the elongated screw." (Claim Constr. Op. at 14.) Defendants make three arguments as to why the jury's verdict regarding Claim 27(e) is "seriously erroneous" and a "miscarriage of justice": (1) Claim 27(e) fails the "function-way-result" test; (2) Plaintiff disclaimed the shaft; and (3) the jury's verdict "vitiates the 'hollow hub' element.'" (Defs.' New Trial Mem. at 11–16.)

Regarding the "function" of the hollow hub, Defendants note that Plaintiff and Dr. Garris "agree that the claimed hollow hub and the Vortek shaft (what [Plaintiff] called the Vortek hollow hub) perform two functions: moving and supporting the drum." (Defs.' New Trial Mem. at 12.) While Defendants acknowledge that the Vortek's hollow hub "engages the ACME screw axially to *move* the drum," they argue that Plaintiff did not offer testimony at trial on how the '485 Patent's and Vortek's hollow hubs *support* the drum. (*Id.* at 12–13 (emphasis added).) This statement ignores the fact that Plaintiff introduced "evidence [that] demonstrated that the Vortek extended hub supports the drum by being rotatably journalled to a bearing on the base member." (Trial Tr. 92:24–93:1, 93:5–12, 94:9–18, 133:16–24, 135:8–13, 138:23–139:6, 149:3-14, 150:15–19, 157:5–15, 190:15–18; Pl.'s New Trial Opp'n at 12.) Moreover, Plaintiff also notes that even Dr. Garris

"agreed that the Vortek extended hub acts as a beam that transfers lateral loads from the drum by being rotatably journalled into a bearing on the base member." (Trial Tr. 536:10–11, 536:15–19, 554:11–20, 557:19–558:9, 574:12–15; Pl.'s New Trial Opp'n at 13.) Accordingly, Plaintiff presented ample evidence to support a finding that the Vortek's hollow hub performed substantially the same "function" as the '485 Patent Winch's hollow hub.

Regarding the "way" the two hollow hubs perform their moving and supporting "functions," Defendants argue that the Vortek hollow hub has a "much simpler design" than the '485 Patent Winch's hollow hub, and therefore supports the drum in a "substantially different way." (Defs.' New Trial Mem. at 13.) But at trial, the jury was presented with testimony from Defendants' own expert admitting that the design of the Vortek is not relevant to the "way" that the hollow hub supports the drum. (Trial Tr. at 558:1–9; Pl.'s New Trial Opp'n at 13.) The jury therefore reasonably concluded that the Vortek's and the '485 Patent Winch's hollow hubs move and support the drum in substantially the same "way."

As to the respective hollow hubs' "results," Defendants argue that the evidence Plaintiff presented was "conclusory" and exactly the kind of "testimony that the Federal Circuit has deemed insufficient to prove the [doctrine of equivalents]." (Defs.' New Trial Mem. at 13.) Defendants point to several inapposite cases where the Federal Circuit found that testimony lacking any particularized discussion of structure or functionality could not support a finding of equivalence. (*Id.*) That is not the case here. Rather, Plaintiff presented ample testimonial and documentary evidence to support the jury's conclusion that both hollow hubs produced substantially the same "result." (Trial Tr. 94:9–25, 123:6–17, 135:8–13, 138:23–139:14, 154:24–155:1, 155:9–16, 155:25–156:7, 162:25–163:10, 522:15–25 , 540:5–12; Pl.'s New Trial Opp'n at 14); *see Texas Instruments, Inc. v. Semiconductor Corp.*, 90 F.3d 1558, 1567–68 (Fed. Cir. 1996) (rejecting a

conclusory statement that claimed and accused processes were the same); *Malta v. Schulmerich Carillons, Inc.*, 952 F.2d 1320 (Fed. Cir. 1991) (rejecting expert testimony merely noting that two structures "function" similarly).

In arguments (2) and (3), Defendants merely reiterate the claims made in their motion for judgment as a matter of law. This Court rejected those arguments in Section III, *supra*, and need not revisit them here. Accordingly, this Court finds that the jury considered ample evidence that the Vortek's hollow hub is equivalent to the '485 Patent Winch's hollow hub.

*d. Claim 27(h): The "Screw Into Drum" Element.*

Defendants again reiterate the same argument that they made in their motion for judgment as a matter of law that the Vortek's shaft vitiates Claim 27(h) "because it does not allow the screw to go into the drum" and is therefore "the polar opposite of allowing it to go in." (Defs. New Trial Mot. at 16.) This Court addressed this argument in Section III, *supra*, denying Defendants' Vitiation Claim. Therefore, Defendants' argument pertaining to Claim 27(h) is dismissed for the same reasons.

**B. The Court Properly Precluded Defendants' Prior Art.**

According to Defendants, Judge Sweet made "a prejudicial evidentiary ruling that likely swayed the jury in [Plaintiff's] favor when it precluded the jury from hearing about the prior art." (Defs.' New Trial Mem. at 19.) Plaintiff responds with three arguments as to why that is not the case: (1) Defendants previously withdrew their "affirmative defense that [the '485 Patent] is invalid for failure to satisfy the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103 and/or 112" (Joint Stip. & [Proposed] Order Regarding the Withdrawal of Certain Aff. Defenses ("Withdrawal Stip."), ECF No. 135, at 1); (2) "the prior art was irrelevant to this dispute at trial";

and (3) Federal Rule of Civil Procedure 61 "forecloses [Defendants'] [n]ew [t]rial demand." (Pl.'s New Trial Opp'n at 16–19.)

Before trial, Defendants petitioned the Patent Trial and Appeals Board ("PTAB") to conduct an *inter partes* review ("IPR") to invalidate the '485 Patent based on prior art. The PTAB rejected this petition, noting that "based on [its] review of the record, [it] conclude[s] that [Defendant] has failed to demonstrate that it is reasonably likely to prevail with respect to any of its challenges." (Pl.'s New Trial Opp, Ex. H ("PTAB Decision"), ECF No. 368-8, at 2.) Accordingly, Defendants withdrew their invalidity defense on May 15, 2017. (Withdrawal Stip.) This is critical because "[w]here validity in view of the prior art has not been challenged, the court is less free to limit the application of the doctrine of equivalents than where invalidity is specifically urged by the alleged infringer." *Thomas & Betts Corp. v. Litton Sys., Inc.*, 720 F.2d 1572, 1580 (Fed. Cir. 1983).

Defendants now attempt to argue that "with the benefit of this prior art, the jury would have understood that the ['485 Patent W]inch is not pioneering and is thus only entitled to a limited breadth of equivalents." (Defs.' New Trial Mem. at 22.) This argument flies in the face of Defendants' withdrawal of their invalidity defense and the PTAB's decision rejecting Defendants' prior art invalidity argument. Moreover, Defendants filed a motion *in limine* seeking to block Plaintiff's use of "(i) [Defendants'] failed IPR and (ii) the withdrawal of its invalidity claim." (Pl.'s New Trial Opp'n at 16; Defs.' Mots. *In Limine* at 6–7.) Accordingly, as Plaintiff argues, Defendants' "successful argument that the detailed PTAB analysis on this [p]rior [a]rt was 'irrelevant' and should be excluded cannot be reconciled with its current position." (Pl.'s New Trial Opp'n at 18–19.)

Defendants also attempt to rely on cases indicating that, under the doctrine of equivalents, "a greater degree of liberality and a wider range of equivalents are permitted where the patent is of a pioneer character than when the invention is simply an improvement." (Defs.' New Trial Mem. at 19 (quoting *Cimiotti Unhairing Co. v. Am. Fur Refining Co.*, 198 U.S. 399, 406 (1905)).) Defendants attempt to argue that inclusion of the prior art would illustrate to the jury that the '485 Patent is not of pioneering quality and that a finding of equivalence would therefore be erroneous. (Defs.' New Trial Mem. at 21–22.) Yet, Defendants overlook *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, where the Supreme Court "largely eliminated any role for pioneering status . . . [holding] that equivalents must be determined on a *limitation by limitation* basis." (Pl.'s New Trial Opp'n at 21 (citing 520 U.S. 17, 29–30 (1997)) ("[T]he doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole.") (emphasis in original).) In erroneously emphasizing the pioneering status of the patent as integral to a doctrine of equivalents analysis, Defendants do not point to any controlling authority decided after *Warner-Jenkinson*.

Plaintiff also points out that the prior art was irrelevant to the dispute at trial because he "never claimed the '485 patent was a 'pioneering' invention," that he "invented the zero-fleet angle winch," or "that the prior art consisted solely of 'sand bag' counterweights and pulleys." (Trial Tr. 85:17–90:4; Pl.'s New Trial Opp'n at 17.) Rather, Plaintiff points to several instances in which testimony revealed advances in the winch design prior to the '485 Patent. (Pl.'s New Trial Opp'n at 17.) Moreover, prior art is primarily relevant to a claim that questions the *validity* of the patent, which Defendants refused to challenge after it was expressly upheld by the PTAB. (Withdrawal Stip.)

Finally, under Rule 61, "the court must disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61. Accordingly, "[a]n erroneous evidentiary ruling warrants a new trial only when a 'substantial right of a party is affected,' as when 'a jury's judgment would be swayed in a material fashion by the error.'" *Lore v. City of Syracuse*, 670 F.3d 127, 155 (2d Cir. 2012) (citation omitted). Here, Defendants' withdrew their invalidity defense and even represented to the court in their motions *in limine* that this withdrawal, as well as the PTAB's decision and prior art discussed therein were "irrelevant" to the issues presented at trial. (*See generally* Defs.' Mots. *In Limine*.) This judicial admission is binding on Defendants and thereby relieves this Court of the burden of further addressing it here. *See Hoodhoo v. Holder*, 558 F.3d 184, 191 (2d Cir. 2009) ("Facts admitted by a party are judicial admissions that bind th[at] [party] throughout th[e] litigation."). In light of this judicial admission, Defendants cannot now allege that the prior art was integral to their defense and that exclusion of it from evidence was "highly prejudicial."

Accordingly, Defendants were not unduly prejudiced by the exclusion of the '485 Patent's prior art at trial.

**C. The Jury's Damages Award Was Not Excessive & Conditional Remittitur Is Denied.**

"Where there is no particular discernable error, [the courts] have generally held that a jury's damage award may not be set aside as excessive unless the award is so high as to shock the judicial conscience and constitute a denial of justice." *Lore*, 670 F.3d at 177 (citation omitted). Under the Patent Act, a prevailing patent owner is entitled to damages "adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. The Federal Circuit has held that "[d]eciding how much to award as damages is not an exact science, and the methodology of assessing and computing damages is

committed to the sound discretion of the district court." *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1576–1577 (Fed. Cir. 1989). Therefore, a party that challenges a damages award "must show that 'the district court *abused its discretion* by basing its award on clearly erroneous factual findings, legal error, or a manifest error of judgment.'" *Id.* at 1577 (quoting *DataScope Corp. v. SMEC*, Inc., 879 F.2d 820 (Fed. Cir. 1989) (emphasis added)). In conducting this analysis, "[a]ny doubt[s] about the amount of the damages must be resolved against the infringer." *Id.*

Defendants allege that Plaintiff's damages expert, Joel Wacek, made three critical errors in his analysis that resulted in an over-inflated per-unit royalty rate: (1) "he did not apportion the royalties in the license agreements to the value of [the '485] Patent," (2) "he did not account for the fact that the license agreements were exclusive," and (3) "he miscalculated the royalty rate in the settlements by failing to take into account royalty-free units that were part of the lump sum payments." (Defs.' New Trial Mem. at 23.)

A critical deficiency of these arguments is that they pertain to the *methodology* that Wacek used to calculate the royalty rate, which should have been resolved "under the framework of the Federal Rules of Evidence and through a challenge under *Daubert v. Merrell Dow Pharmaceutical, Inc.*, 509 U.S. 579 (1993)." *Versata Software, Inc. v. SAP America, Inc.*, 717 F.3d 1255, 1264 (Fed. Cir. 2013). Defendants cannot raise this issue now "under the guise of sufficiency of the evidence." *Id.*

Even assuming that this inquiry is not precluded by *Daubert*, Plaintiff accurately argues that Wacek addressed in his testimony each of Defendants' allegations. First, regarding apportionment, Wacek "concluded that the value in each agreement resided with the patent rights." (Pl.'s New Trial Opp'n at 26.) As acknowledged by Defendants' expert, Dawn Hall, this conclusion is not arbitrary as "trade secrets for mechanical designs can be reverse-engineered once

sold—and thus, as with many industries, attribution of value resided with the '485 Patent." (*Id.*; Trial Tr. 655:6–8.) Second, regarding the exclusivity of the license agreements, to say that Wacek did not consider exclusivity at all is directly contradicted by his testimony:

> I also considered that certain of these agreements, these manufacturers received exclusive rights, or the sole rights to use the patent, versus non-exclusive, where others could use it. That's important because, in general, all things equal, an exclusive agreement may have higher royalties than a non-exclusive agreement . . . I didn't see a big premium for exclusivity, and most of the agreements I'm focusing on were for non-exclusive rights anyways.

(Trial Tr. 326:20–327:6.) Finally, as to the royalty-free units, Defendants do not acknowledge Wacek's direct testimony explicitly saying that he took into account the royalty-free credits when calculating the rates for the licenses. (Trial Tr. 316:14–317:21, 321:5–324:10; Pl.'s New Trial Opp'n at 27–28.)

Accordingly, the jury's award of damages in this case does not "shock the judicial" conscience because it was within the range proffered by Wacek during trial and is supported by the evidence presented at trial.[3] (Trial Tr. 354:7–12.)

To be sure, both Defendants' and Plaintiff's experts presented differing opinions on the proper calculation for damages, and "when there is conflicting testimony at trial, and the evidence overall does not make only one finding on the point reasonable, the jury is permitted to make credibility determinations and believe the witness it considers more trustworthy." *MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1168 (Fed. Cir. 2015) (citing *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1362 (Fed. Cir. 2012)). It is not this Court's function to

---

[3] Plaintiff also notes where Wacek addressed each license agreement and royalty rate that Defendants now dispute. (Trial Tr. 307:15–310:9 (CRS); 310:11–313:3, 368:10–12, 371:13–18 (Clancy); 313:21–314:23 (Protech); 315:3–318:21 (Stage Tech); 318:25–324:15, 383:22–384:1 (ETC); Pl.'s New Trial Opp'n at 24–25.)

"second guess or reevaluate the weight given to that evidence." *Id.* (citing *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1192 (Fed. Cir. 1998)). The jury in this case was presented with testimony from both expert witnesses Wacek and Hall, and reached a reasonable conclusion based on that evidence that cannot now be challenged after trial.

*a. Conditional Remittitur is Denied.*

This Court has the power to enter a conditional order of remittitur where

> (1) the court can identify an error that caused the jury to include in the verdict a quantifiable amount that should be stricken, . . . and (2) more generally, where the award is "intrinsically excessive" in the sense of being greater than the amount a reasonable jury could have awarded, although the surplus cannot be ascribed to a particular, quantifiable error.

*Kirsch*, 148 F.3d at 165. Here, because the jury's damages award fell within the range proffered by Plaintiff's expert, there is no basis to find that the award included a quantifiable amount that should be stricken or that it was "intrinsically excessive." (Trial Tr. 354:7–12.) Where the jury has heard both experts' testimony and reached a conclusion based on the evidence, it would be improper to impose a conditional remittitur contrary to the jury's verdict. *Comark Commc'ns*, 156 F.3d at 1192 (Fed. Cir. 1998).

**D. The Court Properly Instructed the Jury on the Doctrine of Equivalents.**

Defendants suggest that Judge Sweet "erred in striking the charge relating to vitiation" and improperly stated "vitiation was not at issue" at trial. (Defs.' New Trial Mem. at 29; Trial Tr. 732:18–734:23.) As discussed at length in Section III (A), *supra*, Defendants' vitiation claim fails. Indeed, Defendants proposed the jury instruction: "something that is the opposite of an equivalent, cannot infringe under the doctrine of equivalents." (Defs.' New Trial Mem. at 29.) But that is exactly the kind of "binary choice" the Federal Circuit cautions against. *Deere & Co.*, 703 F.3d at 1356. Therefore, Judge Sweet correctly noted that "[i]t seems to me that the issue is fairly

presented as to whether they are equivalents, and to say opposite, I don't know that opposite really works here." (Trial Tr. 734:17–20.) As such, Judge Sweet properly excluded this instruction.

Accordingly, upon reviewing the underlying evidence and evaluating whether the verdict was "seriously erroneous" or a "miscarriage of justice," and finding neither, Defendants' motion for a new trial is DENIED.

## V. PLAINTIFF'S MOTION FOR JUDGEMENT AS A MATTER OF LAW IS DENIED

Plaintiff's renewed motion for judgment as a matter of law[4] argues that "the hub extension in the Vortek *literally* satisfies the 'hollow hub' limitation (e) from [C]laim 27 [of the '485 Patent]."[5] (Pl.'s Mem. of Law in Supp. of its Renewed Mot. Pursuant to FRCP 50(b) for J. as a Matter of Law ("Pl.'s JMOL Mem."), ECF No. 343, at 1 (emphasis added).) Claim 27(e) states, "said drum having at a first end a hollow hub rotatably journalled at the first end portion of the base member." (Bressler Decl., Ex. 1 (The '485 Patent) at col. 15, l. 44–45.) Judge Sweet defined "hollow hub" as "a portion of the drum end caps within an elongated opening to allow passage of the elongated screw." (Claim Constr. Op. at 14.)

Plaintiff argues that the jury misinterpreted the "hollow hub" limitation "as requiring that the hub be formed as a unitary extension of the end cap." (Pl.'s JMOL Mem. at 1.) According to Plaintiff, the correct understanding of the "hollow hub" limitation is that "'a portion' includes functionally *equivalent* structures that are *connected together* to form a single functional arrangement." (*Id.* (emphasis added).) According to Plaintiff, because this is the exact

---

[4] Plaintiff first moved for judgment as a matter of law during trial on December 17, 2018. (Trial Trans. 686:18–689:25). Judge Sweet heard oral argument that same day and denied the motion without prejudice. (Trial Trans. 691:7).

[5] Plaintiff also argues that if this Court grants its renewed motion for judgment as a matter of law that the Vortek literally includes Claim 27(e), "this Court should similarly grant [their] renewed motion as to [Claim 27(h)]" because "the finding of equivalence of the 'hollow hub' impacts the determination of the literal inclusion of limitation (h) in the Vortek." (Pl.'s JMOL Mem. at 1 n. 1.)

construction of the Vortek, judgment should be entered as a matter of law in its favor on this issue. (*Id.* at 1–2.)

As previously indicated, however, a party bringing a motion for judgment as a matter of law must meet a "particularly heavy burden where, as here, the jury has deliberated in the case and actually returned its verdict in favor of the non-movant." *Eastman Kodak Co.*, 4 F. Supp. 3d at 577 (citing *Carroll*, 712 F.3d at 651). Moreover, it is well established in this Circuit that when evaluating a motion under Rule 50, a court must "view the evidence 'in the light most favorable' to the non-moving party and give [the non-moving party] 'the benefit of all reasonable inferences that the jury might have drawn in [its] favor from the evidence.'" *Vioni v. Providence Inv. Mgmt., LLC*, 750 F. App'x 29, 32 (2d Cir. 2018) (quoting *Tolbert v. Queens Coll.*, 242 F.3d 58, 70 (2d Cir. 2001)).

In this case, the jury reasonably found that the Vortek had an equivalent element to Claim 27(e), but declined to find that it "literally include[d] the hollow hub limitation." (Trial Tr. 841:1–10.) Accordingly, upon evaluating the evidence, this Court finds that the jury did not err in concluding that the Vortek had an equivalent, but not literal, part to Claim 27(e).

**A. The Vortek Does Not Literally Include A "Hollow Hub."**

The Vortek is made up of a "13-inch long hub extension ("hub extension") [highlighted in green] that extends out from the end cap and has an 11-inch bore that is sized to receive a 10.75-inch long screw [highlighted in red]." (Pl.'s JMOL Mem. at 2 (alterations in original).)



*The Vortek*



*The '485 Patent Winch*

(*Id.* at 2–3.)

Plaintiff contends that the only difference between the Vortek and the '485 Patent is that "the Vortek hub extension and end cap are two separate pieces while the '485 [P]atent discloses the end cap with its hollow hub as a *single piece*." (*Id.* at 3 (emphasis added).) In support of its argument, Plaintiff maintains that (1) Defendants' expert did not address the connection between the Vortek's hub extension and end cap, which "effectively bonds the end cap to the hub extension," thereby creating a "single piece," (*id.* at 5; *see also* Trial Tr. 530:4–9); and (2) the Vortek's "hollow hub" matches the Court's claim construction because Judge Sweet defined "hollow hub" as "a portion of the drum end caps within an elongated opening to allow passage of the elongated screw" (Pl.'s JMOL Mem. at 4).

Regarding Plaintiff's first argument, Defendants properly indicate that Dr. Garris testified at trial that "the set screws simply position the shaft relative to the drum, but do *not* make the Vortek shaft a portion of the drum end cap because the end cap and the shaft are 'separate and independent components.'" (Defs.' Opp'n to Pl.'s Renewed Mot. Pursuant to FRCP 50(b) for J. as a Matter of Law ("Defs.' JMOL Opp'n"), ECF No. 369, at 8; Trial Tr. 478:5–10; 608:3–22.) Dr. Garris further testified that the "piece of the shaft that [Plaintiff] calls the hollow hub is not 'a

portion' of the end cap, it is a shaft that runs through the end cap." (Defs.' JMOL Opp'n at 6; Trial Tr. 477:25–478:10.) These determinations led Dr. Garris to conclude that "the end of the Vortek shaft does not literally meet the Court's definition of the 'hollow hub.'" (Defs.' JMOL Opp'n at 6.)

Moreover, Defendants argue that "the bore hole does not extend to the drum [and therefore] the shaft is not hollow and cannot be a 'hollow hub,' as found by the jury." (Defs.' JMOL Opp'n at 6.) This is supported by the trial transcript where Plaintiff admitted that the screw "does not reach the tubular portion of the drum" because the shaft is in the "way." (Trial Tr. 226:1–10.) Accordingly, Defendants presented ample evidence for the jury to consider when determining whether the Vortek had an equivalent or literal corresponding element to Claim 27(e).

As to Plaintiff's second claim construction argument, Defendants accurately point out that Plaintiff is attempting to "re-write the Court's claim construction" by arguing that "a portion" includes "functionally *equivalent* structures that are connected together to form a single functional arrangement." (Defs.' JMOL Opp'n at 8; Pl.'s JMOL Mem. at 1.) Indeed, this construction would improperly conflate the definition of "equivalent" and "literal," contradicting both Judge Sweet's claim construction order *and* the jury's verdict in this case.[6] As Defendants argue, if Plaintiff "wanted a different [construction], such as a construction that the 'hollow hub' and drum end cap can be separate components, it should have sought reconsideration of the [c]ourt's claim construction order." (Defs.' JMOL Opp'n at 7.)

---

[6] Defendants also allege that Plaintiff's motion for judgment as a matter of law is procedurally defective because "in order to literally infringe, *each element* of the claim must be *literally found* in the Vortek." (Defs.' JMOL Opp'n at 2 (emphasis added) (citing *Intellicall, Inc. v. Phonometrics*, 952 F.2d 1384, 1389 (Fed. Cir. 1992).) But Defendants misstate the relevant law. In *Intellical*, the Federal Circuit held that "infringement requires that *every limitation* of a claim be met literally *or* by a substantial equivalent." 952 F.2d at 1389 (emphasis added).

Where a jury has deliberated and returned a verdict in favor of the non-moving party, as the jury did in this case, this Court may set aside such a verdict only if there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." *Carroll v. Cty. of Monroe*, 712 F.3d 649, 651 (2d Cir. 2013) (quoting *Cash v. Cty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011)). That is not the case here. As already indicated, Defendants presented ample evidence at trial to support their assertion that the Vortek's end cap did not literally correspond to the '485 Patent Winch's hollow hub. (Trial Tr. 478:5–10; 608:3–22; Defs.' JMOL Opp'n.) Moreover, the jury had the opportunity to weigh the evidence presented by both parties, and in doing so reached the reasonable conclusion that the Vortek contained an equivalent corresponding element to the '485 Patent Winch's hollow hub, rather than a literal one. (Trial Tr. 841:1–10.)

Accordingly, Plaintiff's motion for judgment as a matter of law as to Claim 27(e) and Claim 27(h) is DENIED.

## VI. PLAINTIFF'S MOTION FOR ATTORNEYS FEES IS DENIED

Plaintiff's motion for attorney's fees alleges that "Daktronics' vexatious litigation strategy clearly presents the factual bases required to find this case exceptional" for the purposes of awarding such fees under the Patent Act, 35 U.S.C. § 285. (Pl.'s Mem. of Law in Supp. of Plt.'s Mot. for Attorneys' Fees Pursuant to 35 U.S.C. § 285 ("Attorney's Fees Mem."), ECF No. 354, at 1.) According to Plaintiff, Defendants filed meritless motions, repeatedly threatened Plaintiff's counsel with sanctions, and engaged in discovery misconduct, resulting in a four-year delay of trial. (*Id.*) But the totality of the circumstances here do not support a finding that Defendants' behavior was so unreasonable vis-à-vis its litigating position that it "stands out" as a particularly

egregious case of attorney misconduct. *Octane Fitness*, 572 U.S. at 554 ("an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."). Accordingly, Plaintiff's motion for attorneys fees is DENIED.

## VII. PLAINTIFF'S MOTION TO AMEND THE JUDGMENT IS GRANTED

The Patent Act explicitly states that a prevailing patentee in a patent infringement action is entitled to compensation that is "in no event less than a reasonable royalty for the use made of the invention by the infringer, *together with interest* and costs as fixed by the Court." 35 U.S.C. § 284 (emphasis added). The Supreme Court and the Federal Circuit have therefore held that, in patent cases, "prejudgment interest should ordinarily be awarded absent some justification for withholding such an award, [and] a decision to award prejudgment interest will only be set aside if it constitutes an abuse of discretion." *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983); *see also Laitram Corp v. Cambridge Wire Cloth Co.*, 785 F.2d 292, 295–96 (Fed. Cir. 1986) ("CWC failed to provide this court or the trial court with any circumstances which excuse prejudgment interest on awarded damages. Consequently, we find that the magistrate abused his discretion by failing to award prejudgment interest."). Because Plaintiff prevailed at trial, an award of prejudgment interest is appropriate here.

Prejudgment interest should be awarded under 35 U.S.C. § 284 at a rate to be determined by the trier of fact. *See Studienqesellschaft Kohle v. Dart Indus., Inc.*, 862 F.2d 1564, 1579–80 (Fed.Cir.1988). Plaintiff seeks an award of prejudgment interest at the New York statutory rate of 9%. N.Y.C.P.LR. § 5004 ("Interest shall be at the rate of nine per centum per annum, except where otherwise provided by statute."). The source of law underlying a party's claims determines the applicable prejudgment interest rate. *Gust, Inc. v. Alphacap Ventures, LLC*, No. 15 Civ. 192

(DLC), 2017 WL 2875642, at *7 (S.D.N.Y. July 6, 2017) ("[C]laims that arise out of federal law are governed by federal rules, claims arising out of state law are governed by state rules." quoting *In re Palermo*, 739 F.3d 99, 107 (2d Cir. 2014)). Plaintiff's claims arise out of federal law, but there is no applicable federal statute or rule establishing a prejudgment interest rate. *See id.* Therefore, courts in this District award prejudgment interest in patent cases at the New York statutory rate of 9% per annum. *See e.g. Regeneron Pharms, Inc. v. Merus N.V.*, No. 14 Civ. 1650 (KBF), 2018 U.S. Dist. LEXIS 115661, at *20 (S.D.N.Y. Jun. 25, 2018); *Gust*, 2017 WL 2875642 at *7; *Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc.*, No. 90 Civ. 5593 (DC), 1997 WL 177886, at *2 n.1 (S.D.N.Y. Apr. 14, 1997).

The jury determined that the relevant time period for damages purposes is from June 26, 2009, the date of Defendants' first infringing sale of the Vortek, to January 2, 2019, the date of the judgment. (Decl. of Joel Wacek in Supp. Of Olaf Soot Design, LLC's Mot. For Prejudgment Interest ("Wacek Decl."), ECF No. 340, ¶ 2.) Applying a 9% interest rate to the annual unit sales of the Vortek during the relevant time period yields a prejudgment award in the amount of $765,328. (*Id.* ¶¶ 3–4.) Accordingly, Plaintiff is entitled to this amount on top of the jury's damages award of $1,072,800, for a total recovery of $1,838,158.

Plaintiff also seeks post-judgment interest pursuant to 28 U.S.C. § 1961(a), which states that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." Defendants do not object to Plaintiff's request for post-judgment interest. (Daktronics' Opp'n to OSD's Mot. To Am. the J., ECF No. 373, at 11.) Accordingly, Plaintiff's request for an award of post-judgment interest in accordance with this District's fee schedule is granted in full.

## VIII. CONCLUSION

Defendants' motions for judgment as a matter of law and for a new trial, ECF Nos. 329 and 346, are DENIED.[7] Plaintiff's motions for judgment as a matter of law and for attorney's fees, ECF Nos. 342 and 353, are DENIED. Plaintiff's motion to amend the judgment to include prejudgment and postjudgment interest, ECF No. 338, is GRANTED.

The Clerk of the Court is instructed to close the motions.

Dated: New York, New York
August 27, 2019

SO ORDERED.

GEORGE B. DANIELS
United States District Judge

[7] Defendants' motion to strike portions of Plaintiff's oral argument PowerPoint presentation, ECF No. 405, is also DENIED as moot. This Court did not rely on the contents of that presentation to decide Defendants' motion for a new trial.